# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JAMES WILLIAM MYERS, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-110-TLS |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, James Williams Myers Sr., seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff's application was denied initially and upon reconsideration. On September 4, 2014, an administrative law judge (ALJ) held a hearing on the Plaintiff's application. On October 31, 2014, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. On January 29, 2016, the Appeals Council denied review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## EVIDENCE OF RECORD

The Plaintiff was born on January 20, 1965. (R. at 37, ECF No. 11.) He has received a GED. (R. at 40.) The Plaintiff's work history includes working as a heating and air laborer, box stacker, tow truck driver, and construction worker. (R. at 41–50.)

In the present case, the Plaintiff claims to have become disabled on October 23, 2012, due to multiple physical and mental impairments, including anxiety, major depressive disorder/bipolar disorder, post-traumatic stress disorder (PTSD), diminished vision in one eye and blindness in the other, chronic obstructive pulmonary disorder (COPD), fibromyalgia, diabetes, sleep deprivation, and seizures. (Pl. Br. 2, ECF No. 19.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff did not engaged in SGA since the alleged onset of disability and thus, the Plaintiff satisfied the step one inquiry. (R. at 15.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments, including PTSD, bipolar I disorder, chronic obstructive pulmonary disease, obstructive sleep apnea, obesity, cervical degenerative disc disease, and right eye keratoconus were severe impairments because they significantly limit his ability to perform basic work activities. (*Id.* at 16.) Step three requires the ALJ to "consider the

medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform light work, as defined by § 404.1567(b). (R. at 16–18.) Specifically, the ALJ held that the Plaintiff is able to engage in lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently, standing and/or walking for up to six hours in an eight-hour workday, sitting for up to six hours in an eight-hour workday, frequent balancing and stooping, occasional climbing ramps and stairs, crouching, kneeling, and crawling. (R. at 18.) However, the ALJ added that the Plaintiff can never climb ladders, ropes, or scaffolds, is limited to occupations that do not require depth perception, should avoid concentrated exposure to extreme temperatures, wetness, humidity, and irritants such as fumes, odors, dust, and gasses, poorly ventilated areas, and chemicals. (*Id.*) Additionally, the Plaintiff is precluded from work involving driving motor vehicles, operating heavy or dangerous equipment or machinery, or being in close proximity to open flames with sharp objects. (*Id.*) With regard to the Plaintiff's mental capacity, the ALJ found that the Plaintiff is unable to engage in complex or detailed tasks,

3

but is able to perform single, routine, and repetitive tasks consistent with unskilled work, and he can sustain and attend to tasks throughout the eight-hour workday. (*Id.*) The Plaintiff is also limited to low stress work and superficial interactions with co-workers, supervisors, and no contact with the general public. (*Id.*)

In arriving at the RFC, the ALJ determined that "the evidence of record does not demonstrate that he is totally disabled from performing work." (R. at 20). First, the ALJ examined the Plaintiff's mental impairments, and then his physical impairments.

A.     **Mental Impairments**

When analyzing the Plaintiff's PTSD and bipolar mental impairments, the ALJ noted that the claimant was discharged after attending one treatment session, that many of his symptoms were treated by medications, and that the Plaintiff did not attend treatment sessions, or if he attended, it was only superficially. (*Id.*)

The ALJ also examined the Plaintiff's Global Assessment Functioning (GAF) scores, which were consistently low from 2011 through 2013, typically indicating serious functioning issues. The ALJ held that the first GAF examination conducted by Dr. Yarling was an initial assessment and is inconsistent with Dr. Yarling's findings, thus, the ALJ gave the first GAF score "only some weight." (R. at 22.) The ALJ also scrutinized the GAF examination in 2012, which was conducted by Mr. Bingi, a psychologist and consultative examiner. (R. at 21.) The ALJ concluded that the Plaintiff did not appear to be genuine with Mr. Bingi because the Plaintiff claimed that his fiancé did everything around the house and he does not have a good relationship with his family. However, the Plaintiff's fiancé suffers from bipolar disorder, rendering her disabled, and the ALJ concluded that she could not possibly do everything around the house. Moreover, the ALJ noted that the Plaintiff has reconciled with his mother and watches

grandchildren[1] on a daily basis. (*Id.*) Accordingly, the ALJ gave Dr. Bingi's opinions little weight. Finally, though the Plaintiff's 2014 GAF score was low, the ALJ noted that the Plaintiff was not prescribed any more intensive treatments and thus, did not appear to give the GAF score much weight. (R. 22–23.)

In 2013, Dr. Pressner and Dr. Hill, psychologists and state agency consultants, found that the Plaintiff could understand, remember, and carry out on simple tasks, relate on a superficial basis with coworkers, and had symptom improvement with treatment compliance. (R. at 22.) The ALJ found that the opinions of Dr. Pressner and Dr. Hill were supported by the record; specifically the Plaintiff's symptomology improvement in light of his renewed compliance with treatment. (*Id.*)

Though the ALJ detailed the 2014 treatment notes and PTSD diagnosis by the Plaintiff's treating psychiatrist Dr. Varma, the ALJ gave little weight to Dr. Varma's opinion that the Plaintiff is seriously limited in his ability to work, holding that Dr. Varma's diagnosis is inconsistent with the Plaintiff's positive response to consistent treatment, his positive affect and memory, and his ability to cope. (R. at 20, 22.) Again, the ALJ noted that the Plaintiff was noncompliant with treatment, which is when his symptoms returned. (*Id.*) Additionally, the ALJ found both the Plaintiff's credibility diminished and Dr. Varma's diagnosis as unsupported by the evidence because the ALJ determined that the Plaintiff was not honest with Dr. Varma regarding the intensity, persistence, and limiting effects of the symptoms. (R. at 19–20.) Specifically, the Plaintiff again claimed that "his bipolar, disabled [fiancé] takes care of

---

[1] The Court notes that the ALJ appears to reference the Plaintiff's babysitting of "his" grandchildren. The Plaintiff points out that these are not his grandchildren, but rather, his fiancé's grandchildren. The Court holds that the distinction is not relevant—what is relevant is that the Plaintiff watches over children with his fiancé, and the weight the ALJ accorded to this activity. The Court also notes that the Plaintiff's level of involvement and management when babysitting these children is disputed.

everything," but the ALJ again determined this likely was not the case given her condition and the fact that they both watch over grandchildren together. (R. at 20–21.) Moreover, Dr. Varma's notes revealed that the Plaintiff was coherent and had an intact memory, thus, the ALJ concluded that the Plaintiff can perform simple work tasks. (R. at 22.)

**B.      Physical Impairments**

The ALJ first analyzed the Plaintiff's COPD and pulmonary functions, holding that clinical examinations have not revealed major issues and the Plaintiff's credibility is eroded both by his continued smoking habit and his failure to follow through with recommendations to further study and treat his conditions. (R. at 21). Accordingly, the ALJ concluded that "the symptoms must not be so severe as to be debilitating." (*Id.*)

As for the Plaintiff's musculoskeletal issues, the ALJ reviewed the Plaintiff's statements as well as the records of Dr. Bacchus, a consultative examiner. The ALJ concluded that the Plaintiff generally has a full range of motion, and despite considering his obesity, the record does not demonstrate more than a light functional restriction (R. at 21, 23.) The ALJ also relied upon the opinions of Dr. Bond and Dr. Montoya, state medical consultants, that the Plaintiff was able to perform light physical work. (R. at 23.)

At the final step of the evaluation, the ALJ determined that the Plaintiff cannot perform any past relevant work. (*Id.*) However, because of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there are a significant number of jobs in the national economy that the Plaintiff could perform. (R. at 24.) These jobs include price marker, cleaner, and packager. (*Id.*)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Richardson*, 402 U.S. at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529

F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

On appeal to this Court, the Plaintiff presents the following faults with the ALJ's decision: the ALJ did not properly consider the Plaintiff's fibromyalgia diagnosis, the ALJ did not properly evaluate the Plaintiff's disabling symptoms and thus incorrectly reached an adverse credibility determination, the ALJ failed to account for the Plaintiff's anxiety condition under Listing 12.06 and failed to find him disabled pursuant to Listing 12.04 ("Affective Disorders"), and the ALJ failed to adequately weight the medical opinion evidence. (Pl.'s Br. 14, 15, 20, 22, ECF No. 19.)

**A.    The Plaintiff's Fibromyalgia Diagnosis**

The Plaintiff argues that he was diagnosed with fibromyalgia and the ALJ did not properly evaluate this diagnosis.

Upon review of the Record, the Court is not confident that the ALJ gave appropriate consideration to the Plaintiff's fibromyalgia diagnosis. Though the ALJ questioned the Plaintiff about the diagnosis at the oral hearing, the ALJ never once mentioned the Plaintiff's fibromyalgia diagnosis in her decision. (*See* R. at 62–63.) Though an ALJ need not mention every piece of evidence in the record, an ALJ "simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore v. Calvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Here,

8

the ALJ appeared to have reviewed the Plaintiff's records diagnosing him with fibromyalgia, asked the Plaintiff about his diagnosis on the record, and received a response concerning his pain resulting from the condition and his treatment regimen. The ALJ did not explain why the fibromyalgia diagnosis was not persuasive.

Though the Government argues that the Plaintiff did not establish a diagnosis of fibromyalgia, this is a post-hoc rationalization and the Court must limit its review to the rationale offered by the ALJ. *SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014). Here, the ALJ did not offer any rationalization. Accordingly, the Court holds that the ALJ failed to adequately consider the Plaintiff's fibromyalgia diagnosis. The Court remands this case to the ALJ and holds that the ALJ must "acknowledge and address" the Plaintiff's diagnosis of fibromyalgia when determining whether there is or is not sufficient evidence supporting the diagnosis or if the diagnosis is insignificant. *Moore*, 743 F.3d at 1124.

**B.      The Plaintiff's Credibility Determination**

The Plaintiff further finds fault with the ALJ's finding that the Plaintiff was only partially credible because of his noncompliance with treatment and his actions of caring for children.

First, the Plaintiff argues that the ALJ did not inquire of the Plaintiff during the hearing or otherwise analyze why the Plaintiff was noncompliant with treatment and/or unable to afford to follow through with treatment. According to the Plaintiff, the ALJ overlooked in her decision that the Plaintiff had no insurance, could only sporadically afford medication, and received care through an indigent clinic. The Court affirms that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citation omitted). Therefore, "ALJs have a

9

duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking [or] receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013). Though the ALJ noted that the Plaintiff's symptoms were adequately managed under treatment and that the level of treatment prescribed was inconsistent with the Plaintiff's allegations of subjective disability, the Court remands this case to the ALJ to the extent that the ALJ predicated her adverse credibility determination on the Plaintiff's noncompliance without analyzing whether the Plaintiff's noncompliance was due to factors such as the inability to go to the clinic on a sufficient basis, mental illness, or economic constraints.

Second, the Plaintiff argues that the ALJ improperly discredited the Plaintiff's credibility based upon his ability to help care for children on a daily basis. The Court finds that the Seventh Circuit has acknowledged that care for children does not automatically equate to the ability to work. *See Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("The administrative law judge's casual equating of household work [including care for children] to work in the labor market cannot stand."). This is because "taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not. You can park the infant in a playpen for much of the day, and . . . it will sleep much of the day . . . ." *Id.* at 867–68. Accordingly, though the ALJ may review the Plaintiff's daily activities, including household chores and taking care of children, when analyzing his symptoms and severity of his alleged disability, the Plaintiff's ability to engage in child rearing should not be a basis for an adverse credibility determination, especially in the sense that the ALJ should not conclude that the Plaintiff is concealing his ability to work.

## C. The Anxiety Listing (12.06) and Affective Disorder Listing (12.04)

The Plaintiff next argues that the ALJ erred by failing to consider the possibility that the Plaintiff has a severe disability pursuant to Listing 12.06 ("Anxiety Related Disorders") and/or by failing to find the Plaintiff severely disabled pursuant to Listing 12.04 ("Affective Disorders").

First, the Plaintiff points out that PTSD is an anxiety-related disorder. Due to the evidence in the record that the Plaintiff is impaired due to his PTSD, the Plaintiff contends that the ALJ should have discussed his PTSD impairment and described why the condition does or does not meet the anxiety related disorders Listing 12.06 requirements.

Here, similar to the Court's analysis of the fibromyalgia analysis, the Court is not confident that the ALJ gave appropriate consideration to the Plaintiff's PTSD and anxiety disorders in the portion of her decision concerning Appendix 1. Though the ALJ mentions the Plaintiff's PTSD elsewhere in her decision, the ALJ does not mention the Plaintiff's PTSD diagnosis in her analysis of Appendix 1. (*See* R. at 16–18.) "In considering whether a claimant's conditions meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

The Government argues that the Plaintiff did not establish a diagnosis of disabling anxiety related issues because there was no reliable medical opinion on this point. However, the Court must limit its review to the rationale offered by the ALJ. *Chenery*, 318 U.S. at 90–93; *Hanson*, 760 F.3d at 762. Here, though the ALJ referenced the opinions of the medical consultants, Dr. Pressner and Dr. Hill, the ALJ did not draw a logical bridge explaining that she found the opinions of the medical consultants determinative of whether there is no reliable

11

medical diagnosis of anxiety related disorders and/or PTSD. The Court cannot speculate as to the ALJ's decision-making. Accordingly, the Court holds that the ALJ failed to adequately consider the applicability of Listing 12.06 to the Plaintiff's claim of a PTSD diagnosis, and remands this case for the ALJ to do so.

Second, the Plaintiff argues that the ALJ erred in analyzing the 12.04 Listing because she failed to examine the Plaintiff's mental impairments, taken together, when evaluating whether the impairments fulfill the severity requirements of Appendix 1. The Court presently declines to review the Plaintiff's argument on this point. Because of the ALJ's errors with evaluating the Plaintiff's potential anxiety disorders, including PTSD, the ALJ will have to reexamine whether the disorders meet the requisite severity requirements of the listing in Appendix 1. In other words, because the Court has remanded to the ALJ to revisit her analysis of Appendix 1, the challenge made specifically to the ALJ's analysis of Listing 12.04 is moot.

**D.     Treating Sources**

Lastly, the Court declines to review the ALJ's analysis of Dr. Varma's medical opinions. Because of the ALJ's errors with evaluating the Plaintiff's fibromyalgia and anxiety disorders, the ALJ will review Dr. Varma's treatment records, among other relevant medical records. Therefore, the challenge made to the ALJ's current analysis of Dr. Varma's opinions is moot.

**CONCLUSION**

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on August 23, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN

UNITED STATES DISTRICT COURT